FILED
JEANNE A. NAUGHTON, CLERK
OCT 29 2018
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY KR                DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------X

In re:                                           CASE NO. 15-15627 (JNP)

    ALICIA M. BUSILLO,                       CHAPTER 13

        Debtor.

----------------------------------------------------X

In re:                                           CASE NO. 16-24335 (JNP)

    PAUL AND JOANNA CRANE,                   CHAPTER 13

        Debtors.

----------------------------------------------------X

In re:                                           CASE NO. 17-10331 (JNP)

    MILDRED B. REED,                         CHAPTER 13

        Debtor.

----------------------------------------------------X

## **OPINION RELATED TO FEE APPLICATIONS**

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

    Kasen & Kasen, P.C. (the "Law Firm") filed an interim fee application in each of the above cases (the "Fee Applications"). The Court expressed several concerns about the Fee Applications, including whether: (1) the Rule 2016(b) statements or the retainer agreements control the terms for the Law Firm's compensation; and (2) the fees requested are reasonable. The Law Firm argues that the retainer agreements control and the requested fees are reasonable. For the reasons discussed herein, the Fee Applications will be GRANTED, in part, and DENIED, in part.

1

## I. Background

The Law Firm is counsel to each of the debtors. In each case, the Law Firm filed a Disclosure of Compensation of Attorney for Debtor(s) ("2016(b) Statement"), stating the Law Firm accepted a flat-fee of $3,500 for all aspects of representation in the bankruptcy. Dkt. No. 1 in each case. Paragraph 1 of each 2016(b) Statement states: "For legal services, I have agreed to accept $3,500. Prior to the filing of this statement I have received $3,500. Balance Due $0." Paragraph 6 of each 2016(b) Statement states:

> In return of the above disclosed fee, I have agreed to render legal services for all aspects of the bankruptcy case, including:
>
> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
>
> b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
>
> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
>
> d. Representation of the debtor in adversary proceedings and other contested matters;
>
> e. [Other provisions as needed]

(Brackets original.) Paragraph 7 of each 2016(b) Statement states: "the above-disclosed fee does not include the following service[s.]" The Law Firm left this response blank.

The overwhelming majority of 2016(b) statements the Court reviews in Chapter 13 cases include responses substantially similar to paragraph 1 (although attorneys are often paid less than the full amount to which they have agreed before the petition date). The responses to paragraph 6 are almost always limited to the specific tasks listed in Local Rule 2016-5(a)(1).[1] The responses to paragraph 7 typically list services that are not included in the specific tasks listed in Local Rule

---

[1] Local Rule 2016-5 was amended effective August 1, 2018. All references to the Local Rules refer to the rules in effect when the Fee Applications were filed.

2

2016-5(a)(1), such as representation of the debtor in adversary proceedings, claims objections, or other contested matters.

The Fee Applications, in contrast to the 2016(b) Statements, allege the $3,500 in each case was a retainer, and the Law Firm seeks a fee award over $3,500. In Busillo and Reed, the Law Firm filed amended 2016(b) Statements the same day the Fee Applications were filed to reflect that it seeks approval of fees over $3,500. The Law Firm did not file an amended 2016(b) Statement in Crane.

The Court expressed concern about the Fee Applications and corresponded with the Law Firm on April 2, 2018, asking the Law Firm to address the following issues:

> (1) Whether the [2016(b) Statement] or the engagement letter in each case controls whether [the Law Firm] may request additional fees or the amount or the method by which [it] request[ed] fees . . .
>
> (2) Whether clients were notified of increases in hourly rates and if those increases were agreed upon.
>
> (3) Whether [the Court] can award fees for pre-petition representation.
>
> (4) Any other issues that arise related to the above inquiries or that may be raised in any response(s) that may be filed.

Letter from Court to J. Kasen (Apr. 2, 2018), Dkt. Nos. 36 (Busillo), 78 (Crane), 51 (Reed).

The Law Firm filed responses on April 26 asserting: (1) in Crane, the retainer agreement was entered into more than year before the petition date, thereby making the 2016(b) Statement superfluous; (2) the retainer agreements in Busillo and Reed control; (3) the Law Firm does not seek awards for pre-petition representation; and (4) all of the Debtors were aware of the retainer agreements and were notified of increases in hourly rates.

At a hearing on May 17 the Court focused on the first issue – whether the 2016(b) Statements or the retainer agreements control. The Court asked Ms. Kasen, an attorney with the

3

Law Firm, to address or distinguish In re Jackson, 401 B.R. 333 (Bankr. N.D. Ill. 2009), and cases cited in, or similar to Jackson. Under a retainer agreement in Jackson, the debtor's attorney received a $4,995 retainer and agreed to bill the debtor for most post-petition services. The attorney, however, mistakenly did not disclose this fee agreement in his 2016(b) statement. Id. at 340. The court held that the 2016(b) statement controlled and the attorney failed to satisfy his obligations under section 329(a). Id.

The Court allowed the Law Firm to review Jackson and similar cases and to submit further briefing – specifically, how Jackson can be reconciled with, or distinguished from, the Law Firm's contention that the retainer agreements should control. The Court also requested a brief on whether creditors received notice of the additional attorney fees and if they were potentially misled.

The Law Firm filed a letter-brief in each case on June 14. In Crane, the Law Firm argued that: it successfully represented the debtor; creditors received notice of the Fee Application; creditors would not be harmed; and the fees requested are reasonable. The Law Firm did not address the Court's inquiry on Jackson. Instead, it merely stated:

> To the extent that the Court has taken the position that Law Firm's inadvertent filing of [the 2016(b) Statement] somehow made 11 U.S.C. § 329(a) applicable to this case, Law Firm adamantly disagrees and notes that the Court has not cited to, and Law Firm is not aware of any case law that would support such ruling.

Letter-Brief from J. Kasen to Court (June 14, 2018), Dkt. No. 82. The Law Firm advanced similar arguments in Busillo and Reed, adding that the debtors have exemptions from which to pay the attorneys' fees. Again, rather than directly addressing Jackson, the Law Firm stated: "there is no binding precedent in this Court." Dkt. Nos. 38, 53 (Busillo and Reed, respectively).

At a hearing on July 5, Ms. Kasen acknowledged the Law Firm's filing of the 2016(b) Statement in Crane but argued the Law Firm's inadvertent exclusion of the retainer agreement on the 2016(b) Statements in Busillo and Reed, should not preclude awarding fees as requested.

4

She also stated the funds received from each Debtor pre-petition, as well as additional funds received post-petition, have been applied to each Debtor's account, even though the Court had not approved the Fee Applications. Ms. Kasen urged the court not to review the fees requested since no party in interest objected, and she asked the Court to exercise its equitable powers to award the fees requested. July 5 Hearing at 2:15.

## Local Rule 2016-5

Local Rule 2016-5 provides that "[a] chapter 13 debtor's attorney who charges a fee of $3,500 or less is not required to file and application for allowance of compensation." D.N.J. LBR 2016-5(a). This "No-Look Fee" requires the debtor's attorney to provide certain services to the debtor in return for the fee. See id. 2016-5(a)(1)(A)-(H). If a law firm chooses to accept the No-Look Fee, those fees are deemed allowed and the attorney may be paid without filing a fee application. See id. 2016-5(a)(1). The vast majority of attorneys filing chapter 13 cases in this vicinage seek payment under the No-Look Fee, and the order confirming a debtor's plan includes a paragraph allowing the No-Look Fee.

Local Rule 2016-5 also allows attorneys to seek supplemental fees for services provided that were not included as part of the No-Look Fee. Those fees are usually sought by filing a local form, Certification of Debtor's Counsel Supporting Supplemental Chapter 13 Fee (the "Supplemental Fee Form"), and on occasion by filing a fee application. The Supplemental Fee Form lists standard fee amounts for various services that attorneys often perform. The standard fees were set by the District's panel of Bankruptcy Judges after consultation with the Bankruptcy Court's Lawyers Advisory Committee and are deemed to be reasonable compensation for typical services provided by debtors' attorneys. The Court generally awards supplemental fees in accordance with this schedule. But it has deviated in appropriate cases, such as when an attorney assists a debtor with loss mitigation or when difficult or unusual issues arise in a case.

## II.    Analysis

### The 2016(b) Statements Control

The Court "has a <u>duty</u> to review fee applications, notwithstanding the absence of objections by the United States trustee ("UST"), creditors, or any other interested party . . . ." <u>In re Busy Beaver Bldg. Ctrs., Inc.</u>, 19 F.3d 833, 841 (3d Cir. 1994) (emphasis original). Section 329 of the Bankruptcy Code states:

> [a]ny attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). Rule 2016(b) implements section 329, and mandates an attorney, "whether or not the attorney applies for compensation" to file a 2016(b) statement within fourteen days after a petition is filed, or as the court directs. Fed. R. Bankr. P. 2016(b). Fee application review under section 329 and Rule 2016(b) is designed to preserve "the integrity of the bankruptcy process," <u>In re Andreas</u>, 373 B.R. 864, 872, (Bankr. N.D. Ill. 2007), examine the relationship between the debtor and debtor's counsel, "protect debtors against any unfair arrangements with their bankruptcy counsel," 1 Bankruptcy Law Manual § 4:34 (5th ed. 2018), and determine whether compensation paid to debtor's counsel is reasonable. See <u>Busy Beaver</u>, 19 F.3d at 841. To facilitate the Court's review, an attorney must "lay bare all dealings" with the debtor. <u>In re Saturley</u>, 131 B.R. 509, 517 (Bankr. D. Me. 1991). Disclosures must be "precise and complete." <u>In re Berg</u>, 356 B.R. 378, 381 (Bankr. E.D. Pa. 2006). "Coy or incomplete disclosures" that force the court to "ferret out pertinent information" are not acceptable, even if they are the result of negligence or inadvertence. <u>Saturley</u>, 131 B.R. at 517; <u>Jensen v. U.S. Trustee</u>, 210 B.R. 844, 848-49 (10th Cir. BAP 1997). Bankruptcy courts have discretion to determine whether a fee is allowed. <u>In re</u>

6

Imperial "400" Nat'l, Inc., 274 F.Supp. 351, 358 (D.N.J. 1967). See also In re Wiredyne, Inc., 3 F.3d 1125, 1128 (7th Cir. 1993). Fee denials may, on occasion, appear to be draconian, but such determinations are often necessary to deter violations and ensure that attorneys are diligent in their efforts to properly disclose their fee agreements and the fees requested. See, e.g., In re Downs, 103 F.3d 472, 479 (6th Cir. 1996) (violations of section 329 or Rule 2016(b) often results in denial of all fees); In re Keller Fin. Servs. of Fla., Inc., 248 B.R. 859, 886 (Bankr. M.D. Fla. 2000) ("[c]ourt may exercise its discretion and deny or reduce fees for counsel's failure to disclose its fee arrangements with debtor, whether or not actual harm accrues to the estate"); Saturley, 131 B.R. at 517 ("court may exercise its discretion to deny or reduce fees for counsel's failure to disclose its fee arrangements whether or not actual harm accrues to the estate"); In re Blackburn, 448 B.R. 28, 41 (Bankr. D. Idaho 2011) (fee "disclosure rules [must] be applied literally, even if the results are at times harsh"). But see In re Kowalski, 402 B.R. 843, 849 (Bankr. N.D. Ill. 2009) (court refused to deny and compel disgorgement of fees for failure to meet Rule 2016(b) disclosure requirement because such an outcome would "be unduly harsh in light of the beneficial and successful work [the attorney] performed for the Debtor").

In response to the Court's inquiry on whether the 2016(b) Statement or the retention agreement controlled the Law Firm's compensation, the Law Firm argues the retainer agreements control. Ms. Kasen argued section 329(a) does not apply in Crane because the retainer was paid more than one-year pre-petition. At the July 5 hearing, Ms. Kasen stated, since the 2016(b) Statement was not required, the Court should ignore it even though the information disclosed was false or misleading. As to Busillo and Reed, the Law Firm argues the 2016(b) Statements were filed inadvertently, but the fees requested should be allowed since no party challenged the Fee Applications. These arguments fail to address the Court's concerns.

The Law Firm either forgot the terms of its employment when it filed the 2016(b) Statements or did not review the 2016(b) Statements before filing to make sure they were accurate. While the Law Firm may have initially agreed with each Debtor to be retained on an hourly basis, it filed the 2016(b) Statements, and applied pre-petition retainers (discussed below) as though it had been retained pursuant to the No-Look Fee. Only later, likely at the time the Law Firm was preparing the Fee Applications, did it realize its mistake.

As such, the Court finds that the 2016(b) Statements control the Law Firm's compensation. Each 2016(b) Statement states the Law Firm had accepted $3,500 to provide all services to the respective Debtor(s) – in fact, the 2016(b) Statements did not list any services that were excluded from the $3,500 fee. The 2016(b) Statements did not state that the $3,500 was a retainer, or that the Law Firm intended to bill on an hourly basis and seek court approval of those fees. The Law Firm failed to provide a complete picture of the fee agreements it asserts it reached with its clients. There is nothing to lead the Court (or a third party) to conclude that the Law Firm sought anything more than $3,500 for all services to be provided. Instead, the 2016(b) Statements lead the Court (and third parties) to conclude that the Law Firm agreed to accept $3,500 in each case, for all representation in that case. Moreover, the Law Firm did not attach a retention agreement to any of the 2016(b) Statements.

This case is analogous to Jackson. In Jackson, the court sanctioned an attorney for filing false and misleading 2016(b) statements and inaccurate statement of financial affairs. Jackson 401 B.R. at 341. The debtor and the attorney had entered into fee arrangement, which provided for additional fees due for most post-petition services, and a $4,995 retainer. Id. at 340. The attorney failed to attach the fee arrangement to the 2016(b) statement, even though the statement indicated it had been attached. Id. The statement also provided, in exchange for $4,995 retainer, "the attorney would provide legal services for all aspects of the bankruptcy case." Id. The attorney noted in the

8

statement of financial affairs that he had not been paid, when in fact he had. The court held the attorney failed to meet his obligations under section 329(a) and Rule 2016(b), and the 2016(b) statement controlled.

As in Jackson, the Law Firm did not accurately disclose the fee agreements in the 2016(b) Statements. It failed to mention the existence of a fee agreement or whether the amount listed on each 2016(b) Statement was a retainer or acceptance of the No-Look Fee. Like the attorney in Jackson, the Law Firm stated that the funds received would cover representation of all aspects of the bankruptcy – nothing was excluded. Based upon the 2016(b) Statements alone, the Court could award only the $3,500 No-Look Fee in each case.

But additional facts suggest that the Law Firm intended to accept the No-Look Fee. At the July 5 hearing, Ms. Kasen directed the Court's attention to Exhibit "A" of each Fee Application. At the bottom of each Exhibit "A" is an accounting of fees and expenses. In each case, the $3,500 "retainer" as well as an amount for "post-petition retainer/costs paid" is listed as having already been applied by the Law Firm even though the Court had not approved the fees. Ms. Kasen acknowledged that the funds listed had been received and applied. July 5 Hearing at 2:21.

Applying funds from a retainer prior to court approval is not permitted under the Bankruptcy Code. See In re Chapel Gate Apts., Ltd., 64 B.R. 569, 575 (Bankr. N.D. Tex. 1986) ("any attorney who unilaterally withdraws against a retainer while representing a debtor in bankruptcy proceedings is plainly in violation of the . . . Code"). Payment of fees prior to allowance is cause to deny all compensation in a case, and compel the Law Firm to disgorge any amounts received in the case. See Berg, 356 B.R. at 383; In re Anderson, 253 B.R. 14, 24 (Bankr. E.D. Mich. 2000) (post-petition fee not earned until approved by the court). Moreover, applying client funds prior to obtaining court approval could potentially be considered a violation of the rules of professional conduct. See RPC 1.15(a) ("A lawyer shall hold property of clients or third persons

9

that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."). A lawyer has an independent responsibility to deposit a retainer in the client's trust fund account. "A retainer is for work not yet performed." Anderson, 253 B.R. at 22. As such, "unearned retainers must be deposited into a client trust account" until approved by a bankruptcy court. See id. at 23 (citing Downs, 103 F.3d at 478; 11 U.S.C. § 541(a)(1) (unearned retainer is property of the estate). Applying the "retainer" prior to court approval allowance of fees further supports the conclusion that the Law Firm either intentionally or mistakenly agreed to accept the No-Look Fee in each case.

Ms. Kasen argued that each Debtor's schedules as well as each plan showed the Law Firm sought to be paid on an hourly basis. In essence, Ms. Kasen argued the Court and other parties had the duty to "ferret out pertinent information" about the Law Firm's intended method of compensation, Saturley, 131 B.R. at 517; Jensen, 210 B.R. at 848-89, instead of providing concise and complete information in the 2016(b) Statements. See Berg, 356 B.R. at 381. See also In re Smitty's Truck Stop, Inc., 210 B.R. 844, 849 (B.A.P. 10th Cir. 1997). As noted above, it is not the Court's duty to sift through other pleadings to glean how the Law Firm seeks to be paid. See Saturley, 131 B.R. at 517. Even if the Court reviewed the schedules and the plan in each case, these documents do not specifically state that the Law Firm would be seeking will fees on an hourly basis pursuant to a fee application or might seek fees above the $3,500 it had already received. They merely state the fees would be subject to Court approval – which could be interpreted to mean the Law Firm would ask for the Chapter 13 confirmation order to state that the No-Look Fee was approved.

To determine that the Law Firm intended all along to proceed on an hourly basis would lead the Court to conclude that the Law Firm took actions that may have violated the Rules of Professional Conduct by accepting payment from the retainer prior to Court approval of the fees.

Considering these two options, the Court can only conclude that the Law Firm would not intentionally violate the Rules of Professional Conduct. This conclusion also corresponds with Ms. Kasen's statements at the July 5 Hearing, where she stated the representations in the 2016(b) Statements were "inadvertent."

Therefore, the Court could cap fees at $3,500 stated in each 2016(b) Statements or require the Law Firm to disgorge fees since failed to meet its obligations under section 329 and Rule 2016(b). See Jackson, 401 B.R. at 340-41. However, because none of the Debtors, no creditors, nor any other party in interest has objected to the Fee Applications, the Court will exercise its discretion to allow the Law Firm the No-Look Fee plus supplemental fees in each case.

### 1. Busillo

The Law Firm seeks allowance of fees of $4,697.50 and expenses of $1,180.81, for a total of $5,878.31. This case was a typical Chapter 13 case. The Law Firm assisted Busillo in confirming a plan (and a modified plan), that allowed Busillo to discharge unsecured debt. After reviewing the docket, claims register, and pleadings relevant to considering of the Fee Application, the Court will award the No-Look Fee. And since there were no objections to the Fee Application, the Court will exercise its discretion to award supplemental fees in accordance with the fee schedule in the Supplemental Fee Form of $400.

Supplemental fees will be awarded for preparing and filing: (a) the modified plan ($300) and (b) the amended schedules ($100). The Court will not award fees on an hourly basis because the Law Firm did not show why the work provided was more difficult or required more time than what is provided in the Supplemental Fee Form. The Court will not award additional fees for the preparation of a motion to modify the plan as such motions are superfluous and are not filed in this District. In fact, the only motions to approve a modified Chapter 13 plan, which this Court can recall, were filed by the Law Firm in Busillo and Reed. In conclusion, the Court will allow $3,900

in fees (comprised of the No-Look Fee of $3,500 plus supplemental fees of $400), plus $1,180.81 of costs for a total award of $5,080.81.

### 2. *Crane*

The Law Firm asserts that the requirement to file a 2016(b) Statement did not apply in Crane because it received the retainer more than one year before the petition date. See 11 U.S.C. § 329(a). Although, a 2016(b) statement is not required if "payment or agreement was made more than one year before the [petition date.]" 3 Collier on Bankruptcy ¶ 329.03 (16th ed. 2018). But since the Law Firm filed a 2016(b) Statement, it had a duty to accurately state the terms of its retention. See Saturley, 131 B.R. at 517; Berg, 356 B.R. at 381. To ignore false or misleading documents simply because they were not necessary is bad policy. Once the Law Firm decided (mistakenly or otherwise) to file the 2016(b) Statement, it had a duty to properly disclose the information on that 2016(b) Statement. So, the Court rejects the Law Firm's argument that the Court should ignore the 2016(b) Statement.

Turning to the Fee Application, most of the issues in the Cranes' case related to the mortgage held by MTGLQ, LP.[3] MTGLQ filed a motion for relief from the automatic stay. The motion was in a standard form and the Cranes' objection and amended objection were both filed on the Court's form response.

Shortly after the motion for stay relief was filed, the Cranes filed a motion objecting to MTGLQ's claim seeking to cram down MTGLQ's secured claim under section 1322(b)(2) arguing this was allowed because the mortgage is against two adjoining lots, but the Cranes' home is situated on only one of those lots.

---

[3] After the July 5 hearing MTGLQ assigned its claim to U.S. Bank National Trust as Trustee of Chalet Series III Trust. The Court refers to the secured creditor as MTGLQ because the Cranes' relevant actions related to the claim and mortgage were with MTGLQ.

On January 24, 2017, the Court held a hearing on the motion for stay relief and the objection to MTGLQ's claim, at which time the Court requested additional briefing and scheduled an evidentiary hearing. After the January 24 hearing, the Cranes and MTGLQ began settlement discussions. The Law Firm assisted the Cranes in negotiating a settlement with MTGLQ which settlement was memorialized by an exchange of electronic mails between Ms. Kasen and MTGLQ's attorney.

After a settlement was reached, the Cranes filed a modified Chapter 13 plan, which MTGLQ argued did not meet the terms of the settlement. The parties briefed and argued the issue. The Court determined that the proposed plan did not comport with the terms of the settlement and that the Cranes would have to further modify their plan. The Cranes modified their plan again, and MTGLQ objected again, raising a new argument related to the payments necessary under the Plan. The parties once again briefed and argued the issue. The Court overruled MTGLQ's objection and confirmed the plan on February 9, 2018 (which order was amended on April 5 for reasons not relevant here).

The Law Firm seeks $22,880 in fees and $960.95 of expenses for its representation of the Cranes. As discussed above, the Law Firm's compensation could be limited to the No-Look Fee. But, as in <u>Busillo</u>, it would be inequitable to not award supplemental fees in this case, especially since no party in interest objected to the Fee Application. After reviewing the Fee Application as well as the docket and related pleadings, the Court concludes that the Law Firm provided services that should be compensated in accordance with the Supplemental Fee Form fee schedule, while other services were more complex and entitled to approval on an hourly basis.

The Summary of Services attached to the Fee Application lists six areas in which the Law Firm provided services. The Court reviews each area and the related fees in turn. First, the Law Firm requests $5,467.50 for "Case Administration," which includes discussions with the Cranes

13

related to, and preparation of, the petition, schedules, and Statement of Financial Affairs, and preparing and providing documents to the Chapter 13 Trustee. All these services are included in the services provided as part of the No-Look Fee under Local Rule 2016-5(a), and the Court will consider them as such for purposes of the Fee Application and award no additional fees for these services.

The Law Firm also provided services in this category related to participation in the Court's Loss Mitigation program and litigating an alleged violation of the automatic stay. The Court typically awards supplemental fees for loss mitigation and alleged stay violations on an hourly basis. The Law Firm seeks an award of $3,545 on account of these services, which is at the high end of reasonable but will be allowed.

Next, the Law Firm seeks reimbursement of $6,212.50 for "Claims Administration and Objections." Most of these fees relate to the Cranes' motion objecting to MTGLQ's claim and to cram down MTGLQ's mortgage. The Court will award the full amount requested by the Law Firm because most of the issues presented in this motion were atypical and, therefore, may be compensated outside of amount listed in the Court's Supplemental Fee Form.

The Law Firm requests $400 for preparing for and attending the Meeting of Creditors. These services are included in the No-Look Fee. See D.N.J. LBR 2016-5(a)(1)(D). Therefore, the Court will not allow supplemental fees here.

The Law Firm seeks $8,095 related to the Cranes' Chapter 13 plans. The litigation related to confirmation included some issues that were typical while others were not. After reviewing the Fee Application, the Court concludes that approximately one-third of the requested amount in this category were services that should have been included in the No-Look Fee, including, but not limited to, preparing and filing of the original plan, reviewing objections to the original plan and attending confirmation hearings on account of the original plan, totaling $2,337.50. This amount

will not be allowed as the services provided are properly included in the No-Look Fee. The remaining amount requested ($5,757.50) relates to more complex, atypical issues, including interpretation of the settlement with MTGLQ and the Debtors and MTGLQ seeking to enforce different portions of the agreement at different times. The Law Firm also filed three modified plans, each of which is entitled to $300 standard Supplemental Fee, for a total of $900. The Court will, therefore, allow $6,657.50 as a supplemental fee for issues related to the Cranes' plan.

The Law Firm requests $1,277.50 for defending "Relief From Stay Proceedings." MTGLQ's stay relief motion and the Cranes' response was quite typical in comparison to the numerous stay relief motions before the Court on a weekly basis, and no justification was provided why fees in excess of the standard amount should be granted. Therefore, the Court will allow $400 for responding to the motion for stay relief, and disallow the remaining amount requested.

Finally, the Law Firm seeks $1,427.50 on account of Travel Time. Much of the Law Firm's travel time was on account of portions of the representation included in the No-Look Fee or fees which the Court is awarding as part of the standard supplemental fee (and therefore, not entitled to separate payment for travel) – such as attending the meeting of creditors, confirmation hearings, and the hearing related to MTGLQ's motion for stay relief. However, $245 of the travel time sought by the Law Firm relates to other issues in the case. Therefore, the Court will allow $245 of travel time.

In conclusion, the Court awards the following fees for the Law Firm's representation of the Cranes: (a) No-Look Fee of $3,500; (b) $3,545 on account of Loss Mitigation and stay violation issues; (c) $6,657.50 for Chapter 13 plan issues and modified Chapter 13 plans; (d) $400 for opposing MTGLQ's stay relief motion; and (e) $245 for travel time. The total amount of fees allowed in Crane is $14,347.50 plus $960.95 of expenses.

### 3. Reed

The Law Firm seeks allowance of fees of $7,767.50 and expenses of $1,239.29, for a total of $9,006.79. The Law Firm assisted Reed in filing her plan and ultimately confirming a modified plan, as well as negotiating a loan modification with U.S. Bank. The Law Firm also filed motions to disallow claims. After reviewing the case docket, claims register and relevant pleadings as well as the Fee Application, the Court concludes that this case was a typical Chapter 13 case; it was not complicated. Accordingly, the Court will award the No-Look Fee of $3,500 and supplemental fees as follows.

Under the supplemental fee schedule, the Law Firm would be entitled to additional fees for: filing amended plans; attending additional confirmation hearings; filing the motions to expunge claims; and amending Reed's schedules. Under the fee schedule, this would result in supplemental fees to the Law Firm of $2,500. In addition, the Court typically allows fees on an hourly basis for negotiating loan modifications. The Law Firm seeks $805 for negotiating the loan modification, which is reasonable and will be allowed. Therefore, the Court will allow fees $6,805 (comprised of the $3,500 No-Look Fee plus supplemental fees of $3,305), plus costs of $1,239.29.

### III. Conclusion

For the reasons set forth above, the Court grants, in part, and denies, in part, the Fee Applications. Fees will be awarded as follows: Busillo - $3,900 in fees and $1,180.81 of expenses; Crane - $14,347.50 in fees and $960.95 of expenses; and Reed - $6,805 in fees and $1,239.29 of expenses.

Dated: October 29, 2018

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE